UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 3:19-cr-210 |
| Plaintiff | |
| v. | MEMORANDUM OPINION AND ORDER |
| Robert Boxx, | |
| Defendant | |

### I. INTRODUCTION

Before me is Defendant Robert Boxx's motion to suppress. (Doc. No. 22). I conducted a hearing on Boxx's motion on September 26, 2019. (Doc. No. 27). Following the hearing, the government filed a memorandum in opposition to suppression, (Doc. No. 29), and Boxx filed a reply. (Doc. No. 32). In response to Boxx's reply, the government filed a motion for further hearing or leave to file a sur-reply, alleging Boxx raised additional arguments in his reply that were not made in his first motion or during the hearing. (Doc. No. 33). Boxx opposes the government's request. (Doc. No. 34).

### II. BACKGROUND

On October 8, 2018, Defendant Robert Boxx was driving a vehicle owned by his girlfriend, LaChana Stovall, when he was stopped by Toledo Police Department ("TPD") Officers Zach Cairl and George Kral. The officers stopped Boxx because the vehicle lacked a front license plate and because the officers suspected the front window tint may be too dark.

After stopping the vehicle, the officers discovered Boxx was driving with a suspended license and asked Boxx to exit the vehicle. But Boxx was not immediately arrested. Officer Cairl

then conducted an inventory search of the vehicle. During this search, he observed a Skittles box on the passenger seat that was not sealed but was closed. He opened the box and discovered the key to the locked glove box. Officer Cairl used this key to open the glove box and discovered a firearm. At this point, Boxx was arrested. Approximately fifteen minutes later, before the vehicle was towed, Stovall arrived at the scene, and the officers informed her the vehicle had to be towed.

Prior to this incident, Boxx had been convicted of the following:

Aggravated Trafficking in Drugs, on or about April 9, 1992, in Case Number 92CR000137, in Sandusky County Common Pleas Court; Criminal Sexual Conduct, on or about July 14, 2005, in Case Number 04-0267-FC, in State of Michigan 22nd Judicial Circuit, Washtenaw County; Criminal Sexual Conduct, on or about February 19, 2009, in Case Number CRW-08-1479FH, in State of Michigan 22nd Judicial Circuit, Washtenaw County; and Deliver or Manufacture a Controlled Substance, Felony Firearms Possession, and Possession of Firearm while Committing a Felony, on or about February 19, 2009, in Case Number CRW-08-131IFH, in State of Michigan 22nd Judicial Circuit, Washtenaw County.

(Doc. No. 1). Because of these previous convictions, Boxx was charged with being felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(e).

### III.   DISCUSSION

Boxx does not dispute that there was probable cause for the stop. (Doc. No. 32 at 2). Instead, he argues the impound of the vehicle and the inventory search incident to that impound violated his Fourth Amendment right against unreasonable searches and seizures. As such, there are two separate issues here. The first is whether the impoundment, or "seizure," of the vehicle was constitutional. Only if the impoundment was constitutional may I consider the independent second issue of whether the inventory search of the vehicle was constitutional.

**A.   Impoundment**

"A warrantless inventory search may only be conducted if police have lawfully tak[en] custody of a vehicle." *United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013) (quoting *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007)). "Discretion as to impoundment is permissible 'so

2

long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'" *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001) (*Colorado v. Bertine*, 479 U.S. 367, 375 (1987)).

The TPD maintains Standard Operating Guidelines concerning the towing of motor vehicles. (*See* Doc. No. 22-5).[1] Section 2.3 of that policy titled "MANDATORY IMPOUND TOW" – provides a list of circumstances in which "[o]fficers *shall* impound vehicles." (*Id.* at 3-4) (emphasis added). One of these circumstances is when the "Driver has a Suspended Operator's License, regardless of the State that issued the suspension or regardless of the type of suspension." (*Id.* at 3).

Boxx does not dispute the fact that his license was "suspended" at the time of the stop. Instead, he argues the officers should have released the vehicle to Stovall rather than impound it. (Doc. No. 32 at 3). In support, Boxx cites Section 5.6.1 of the policy, which states, "No officer shall tow a vehicle when the owner is capable of promptly caring for it himself or grants some other responsible person the accountability for its care, absent justification as the listed in Directive 406.3/2.3 - MANDATORY IMPOUND TOW." (Doc. No. 22-5 at 6).

By its plain language, Section 5.6.1 exempts those Section 2.3 circumstances from situations in which officers shall not tow a vehicle. Sergeant Sean Murphy and both officers involved in this incident each affirmed that officers do not have discretion not to tow a vehicle when the situation presented is one of those listed in Section 2.3. (Doc. No. 27 at 13-14, 37-38, 73-75). As such, the written standard criteria followed by the TPD mandated an impound tow of the vehicle.

Aside from the plain language of the standard criteria alone is the issue of timing. Although Boxx repeatedly emphasizes Stovall's presence at the scene, the dashcam footage shows that Stovall

---

[1] Both parties agree that the copy provided correctly state the TPD tow-related Standard Operating Guidelines in effect at the time of the stop. Sergeant Sean Murphy also testified that this policy language was in effect at that time. (Doc. No. 27 at 30-31).

was not present at the time officers discovered Boxx's license was suspended and impounded the vehicle. (Doc. No. 30). In fact, she arrived approximately twenty minutes after the car was impounded and fifteen minutes after the firearm was found during the inventory search performed in preparation for the tow.² Although she did arrive prior to the time the vehicle was towed, the vehicle had already been lawfully impounded.

Regarding the policy concerns raised by Boxx, (Doc. No. 32 at 4-7), I agree there is some doubt as to whether the policy mandating tow of a vehicle regardless of whether another person is immediately available to care for the vehicle serves the caretaking purpose of towing. But, because another person was not immediately available in this case, the question of reasonableness of the policy itself is not properly before me now. Therefore, the government's motion for a further hearing or leave to file a sur-reply on this issue is denied as moot. (Doc. No. 33).

In this situation, the officers impounded the vehicle, which was located on a public street, after finding the driver and single caretaker of the vehicle at the scene possessed a suspended license and, therefore, could not drive the vehicle.³ In similar circumstances, the Sixth Circuit held impound of a vehicle to be reasonable and that "the officers were not required to allow Defendants an alternative method of securing the vehicle." *United States v. Hockenberry*, 730 F.3d 645, 660 (6th Cir. 2013) (The vehicle was pulled over on a public street. The driver of the vehicle had a suspended license, one passenger did not have a valid license, and the remaining passenger had an active

---

² Sergeant Murphy, Officer Kral, and Officer Cairl each testified that it is custom to conduct the inventory search before calling the tow truck in the event criminal activity is found and additional departments need to search the vehicle prior to the tow. (Doc. No. 27 at 15-17, 45-46, 80). Additionally, Officer Cairl stated that one purpose is that the tow truck could arrive before the inventory search was complete. (*Id.* at 80).

³ It is true that the officers listed the following extenuating circumstances in which they deviated from the mandated protocol and did not immediately impound the vehicle as required by the standard criteria: inclement weather, children in the vehicle, and being "close to home." (Doc. No. 27 at 67-68, 86, 90). But even though Stovall lived very close to the scene, she was not present at the time the officers impounded the vehicle and Boxx's suspended Michigan license did not indicate that his residence was close to the scene.

4

warrant for her arrest.); *see also, e.g., United States v. Harvey*, 16 F.3d 109, 112 (6th Cir. 1994) (upholding the impound of a vehicle "in the absence of any licensed driver to attend to it" when the driver was arrested for having a suspended license and no passenger had a valid license). In light of *Hockenberry* and the fact that there was no one else who could care for the vehicle at the scene at the time the impound decision was made, I find the officers' impound decision to be reasonable.

In sum, I find the officers impounded the vehicle pursuant to the standard criteria and that the impound was reasonable under the circumstances. Therefore, the remaining question is whether the inventory search incident to the impoundment was constitutional.

**B.     Inventory Search**

Officers may conduct an inventory search of a vehicle that is being impounded, without obtaining a warrant, in order to protect (1) "the owner's property while it remains in police custody," (2) "the police against claims or disputes over lost or stolen property," and (3) "the police from potential danger." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). The inventory search "must be conducted according to standard police procedures." *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007); *Florida v. Wells*, 495 U.S. 1, 4-5 (1990).

As with impoundment, the TPD maintains a written policy governing inventory searches conducted incident to impoundment. This policy instructs that:

> The towing officer shall inventory all locked compartments within the towed vehicle if keys to said compartments are readily available.
>     4.3.1 If keys are not available, the locked compartment shall be noted on the IMPOUND REPORT and not forced open as part of a normal inventory.
> …
>     4.3.3 The towing officer shall inventory the contents of all closed containers (boxes, bags or unlocked suitcases), prior to locking them in the trunk.
>         • Officers shall not open locked containers, but shall list them on the vehicle inventory.

(Doc. No. 22-5 at 5). Boxx contends Officer Cairl violated this policy by opening the locked glove box with the key he found in a closed Skittles box located on the passenger seat of the vehicle.

5

The Supreme Court has stated that "policies of opening all containers … are unquestionably permissible." *Wells*, 495 U.S. at 4. That is the case here where the policy instructed officers to "inventory the contents of *all* closed containers" unless the closed container is locked. (Doc. No. 22-5 at 5) (emphasis added). The Skittles box was undoubtedly a closed container and was not locked. Therefore, regardless of the nominal value or assumed contents of the Skittles box, Officer Cairl opened the closed container in accordance with the policy.

Thus, the remaining question is whether the policy authorized Officer Cairl to use that key to open the glove box. To answer this question, I must determine whether the key was "readily available" as stated by the policy. Sergeant Murphy admitted that the term "readily available" is not "strictly defined" by the policy but opined that a key found hidden in the vehicle would be considered "readily available." (Doc. No. 27 at 23).

By the plain language of the policy, keys are characterized as either "readily available" or "not available." There is no dispute here that they key in question was available at some point. Therefore, it does not fall into the category of "not available." But, because "readily available" is not defined, Officer Cairl was required to exercise some discretion in deciding whether or not to use the key to open the locked glove box. This difficult decision was documented on the dashcam footage in which Officer Cairl expressed doubt as to whether this was the correct decision after the fact.

In difficult cases like this, it is important to remember that "an officer's use of discretion in implementing agency guidelines regarding the conduct of an inventory search does not necessarily violate the Fourth Amendment." *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001). In fact, "officers may exercise some 'judgment based on concerns related to the purposes of an inventory search[.]'" *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007) (quoting *Wells*, 495 U.S. at 4). "Further, officers' suspicion that they may find contraband does not invalidate an otherwise proper

6

inventory search." *Id.* But officers may not conduct an inventory search "in bad faith or for the sole purpose of investigation." *Hockenberry*, 730 F.3d at 659 (quotation omitted).

In this case, Officer Cairl affirmed that "[o]ne of the goals of the [inventory] search is to investigate for other criminal activity." (Doc. No. 27 at 90-91). He also testified that, after using the key to open the locked glove box and finding the firearm, he had concerns about the legality of that decision in light of the fact that the incident would have to be reported to the Detective Bureau, who may disagree with his decision. (*Id.* at 95-96). But Officer Cairl also testified that he believed the key was "readily available" per the department manual. (*Id.* at 85). Further, he expressed his understanding that "everything in the vehicle gets inventoried" and that persons removed from vehicles stay at the back of the vehicle while the officer conducts the inventory search "[s]o they can basically see what we're -- what's all that's going on, what we're doing." (*Id.* at 79, 91).

Although Officer Cairl did not testify to independent knowledge of the purpose of inventory searches or the policy he was charged with executing, there is no evidence that he acted in "bad faith or with the sole purpose of investigation." *See Hockenberry*, 730 F.3d at 661 (upholding a search when the officer's "testimony demonstrated a less than ideal understanding of the purposes of an inventory search" and "he also repeatedly stated that part of the reason for the search was to identify contraband that might pertain to a crime."). Instead, the evidence suggests he attempted to adhere to policy provided to him.

Ultimately, the inventory search was justified by the lawful impound of the vehicle. Officer Cairl found the key to the locked glove box while opening all closed containers as he was directed to do by the TPD policy. His decision to use that key to open the glove box was consistent with the directive that "readily available" keys be used to open locked compartments and inventory their contents.

Further, because the TPD then possessed the key to the locked glove box, using that key to open the glove box and inventory its contents served the long-recognized inventory search purpose of "protection of the police against claims or disputes over lost or stolen property." *Opperman*, 428 U.S. at 369. Accordingly, I find Officer Cairl's inventory search, including using the found key to open the locked glove box, was conducted in accordance with the TPD Standard Operating Guidelines. Therefore, the search did not violate the Fourth Amendment and Boxx's motion to suppress is denied.

## V. Conclusion

For the foregoing reasons, I hereby deny Boxx's motion to suppress. (Doc. No. 22). I also deny as moot the government's motion for further hearing or leave to file a sur-reply, (Doc. No. 33), and Boxx's motion for a ruling on the motion to suppress. (Doc. No. 36).

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge