UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


United States of America,                   Case No. 3:19-cr-210

         Plaintiff

     v.                                         MEMORANDUM OPINION
                                                  AND ORDER

Robert Boxx,

         Defendant

## I.      INTRODUCTION

On July 13, 2020, I denied Defendant Robert Boxx's motion to suppress. (Doc. No. 43). In the opinion, I stated,

> Regarding the policy concerns raised by Boxx, (Doc. No. 32 at 4-7), I agree there is some doubt as to whether the policy mandating tow of a vehicle regardless of whether another person is immediately available to care for the vehicle serves the caretaking purpose of towing. But, because another person was not immediately available in this case, the question of reasonableness of the policy itself is not properly before me now. Therefore, the government's motion for a further hearing or leave to file a sur-reply on this issue is denied as moot. (Doc. No. 33).

(*Id.* at 4). I then concluded the officers impounded the vehicle pursuant to the Toledo Police Department policy in effect and that the impound was reasonable under the circumstances.

Since that time, Boxx filed a motion for reconsideration respectfully asserting I made a mistake of fact in finding there was not another person immediately available to care for the vehicle. (Doc. No. 45). The government agreed an individual off screen identified themself as the owner of the vehicle prior to the time the vehicle was searched but after officers discovered Boxx's license was suspended. (Doc. No. 46 at 2).

In light of my mistake of fact, and over opposition from the government, I found there was sufficient grounds for reconsideration of my previous judgment. (Doc. No. 48). But because the government did not have an opportunity to brief a legal issue that may be dispositive on reconsideration, I ordered further briefing on that issue. (*Id.*).

## II. BACKGROUND

On October 8, 2018, Defendant Robert Boxx was driving a vehicle owned by his girlfriend, LaChana Stovall, when he was stopped by Toledo Police Department ("TPD") Officers Zach Cairl and George Kral. The officers stopped Boxx because the vehicle lacked a front license plate and because the officers suspected the front window tint may be too dark. After stopping the vehicle, the officers discovered Boxx was driving with a suspended license.

Although Stovall was not a passenger in the vehicle, she lived nearby and walked to the scene from her residence. Before officers confronted Boxx about the suspended license, the following conversation occurred between Stovall and the officers:

> Stovall: Hi.
> Officer: Hello.
> Stovall: I just want to make sure it wasn't an issue with [inaudible], because I'm the owner of the car.
> Officer: All right, yah, it's just with him.
> Stovall: Okay.

(Doc. No. 30). The officers then approached Boxx and asked him to exit the vehicle. But Boxx was not immediately arrested.

After Boxx exited the vehicle, Officer Cairl conducted an inventory search of the vehicle. During this search, he observed a Skittles box on the passenger seat that was not sealed but was closed. He opened the box and discovered the key to the locked glove box. Officer Cairl used this key to open the glove box and discovered a firearm. At this point, Boxx was arrested.

### III. DISCUSSION

Boxx does not dispute that there was probable cause for the stop. (Doc. No. 32 at 2). Instead, he argues the impound of the vehicle and the inventory search incident to that impound violated his Fourth Amendment right against unreasonable searches and seizures.

In my original decision, I found both the impoundment and the search incident to that impoundment were constitutional. On reconsideration, Boxx asserts I should conduct a *de novo* review of the entire motion to suppress. (Doc. No. 52 at 3). Because the mistake of fact may be material to whether the impoundment was unconstitutional, those arguments related to the impoundment must be reviewed *de novo*.

"A warrantless inventory search may only be conducted if police have lawfully tak[en] custody of a vehicle." *United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013) (quoting *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007)). "Discretion as to impoundment is permissible 'so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'" *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001) (*Colorado v. Bertine*, 479 U.S. 367, 375 (1987)).

TPD Standard Operating Guideline Directive 406.3 governs "tows." (*See* Doc. No. 22-5).[1] Directive 406.3/2.3, titled "MANDATORY IMPOUND TOW," provides a list of circumstances in which "[o]fficers *shall* impound vehicles." (*Id.* at 3-4) (emphasis added). One of these circumstances is when the "Driver has a Suspended Operator's License, regardless of the State that issued the suspension or regardless of the type of suspension." (*Id.* at 3).

Boxx does not dispute the fact that his license was "suspended" at the time of the stop but argues the officers should have released the vehicle to Stovall rather than impound it. (Doc. No. 32

---

[1] Both parties agree that the copy provided correctly stated the TPD tow-related Standard Operating Guidelines in effect at the time of the stop. Sergeant Sean Murphy also testified that this policy language was in effect at that time. (Doc. No. 27 at 30-31).

3

at 3). In support, Boxx cites Directive 406.3/5.6.1, which states, "No officer shall tow a vehicle when the owner is capable of promptly caring for it himself or grants some other responsible person the accountability for its care, absent justification as the [sic] listed in Directive 406.3/2.3 - MANDATORY IMPOUND TOW." (Doc. No. 22-5 at 6).

Boxx asserts "[t]he plain language of the TPD Manual § 5.6.1. makes reference to the mandatory towing authority in § 2.3 because often the owner of the vehicle is also the driver." (Doc. No. 32 at 3). But the plain language of Section 2.3.4 states "[o]fficers shall impound vehicles if… *Driver* has a Suspended Operator's License." (Doc. No. 22-5 at 3) (emphasis added). There is nothing in Directive 406.3/2.3.4 to suggest a mandatory tow is not required when a person with a valid license could take possession of the vehicle, regardless of whether that person is the owner. As such, the plain language provides Directive 406.3/5.6.1 does not apply when a tow is mandated under Directive 406.3/2.3.[2]

Sergeant Sean Murphy and both officers involved in this incident each affirmed this plain language interpretation is the way in which the TPD interprets Directive 406.3/5.6.1. Each stated officers do not have discretion not to tow a vehicle when the situation presented is one of those listed in Directive 406.3/2.3. (Doc. No. 27 at 13-14, 37-38, 73-75).

Boxx acknowledges Sergeant Murphy testified that a tow was mandated under Directive 406.3/2.3.4 but speculates an exception may exist because "he was not specifically asked about what would happen if the owner of the vehicle was different from the driver." (Doc. No. 32 at 3). But during the hearing, Boxx's counsel presented Sergeant Murphy with the following hypothetical:

> So I just want to make sure I understand this because this is kind of mind-boggling. It's midnight. I'm driving in the car that's registered to me with my husband. I am in downtown Toledo. For reasons I don't know nor does he know -- he failed to pay a ticket or something -- we get stopped for no license plate in the front. His

---

[2] Boxx next urges me to reject this plain language interpretation because "a common sense reading of the policy should have triggered the exception under § 5.6.1." (Doc. No. 32 at 3). This is not within my authority.

4

> license is suspended. You call it in. You're going to kick me out of my car, not
> allow me to drive home in my vehicle, and tow my car?

(Doc. No. 27 at 22). Sergeant Murphy replied, "That is our policy, yes." (*Id.*). Therefore, even if Sergeant Murphy "was not specifically asked" this question, despite Boxx having the opportunity to ask it during the suppression hearing, Sergeant Murphy's testimony suggests this speculative exception does not exist.

Boxx next challenges whether the mandatory-tow policy of Directive 406.3/2.3.4 was truly a discretion-free standard policy because both officers admitted to violating this policy in the past due to "extenuating circumstances." The officers testified they violated the policy a "very low" percentage of the time by deciding not to tow mandatory-tow vehicles when: the weather was inclement, there were children in the vehicle, or "they" were close to home. (Doc. No. 27 at 66-69, 86, 90). Sergeant Murphy testified sergeants would write up an officer, if informed the officer violated Directive 406.3/2.3.4 by not towing a mandatory-tow vehicle. (*Id.* at 22).

Boxx characterizes the officers' previous violations of the policy as inconsistent enforcement of the policy, and argues such inconsistent enforcement invalidates an otherwise standard policy. Boxx cites no case law nor am I able to readily locate any presenting a similar situation. Courts have found no standard policy existed when no written policy existed and inconsistent officer testimony revealed no established routine, *United States v. Duguay*, 93 F.3d 346, 351-52 (7th Cir. 1996), and when the written tow-policy stated "what to do when undertaking to tow, [but] provides no direction on when to do it" and officer testimony "suggest[ed] considerable variety in understanding." *United States v. Goodrich*, 183 F. Supp. 2d 135, 141-42 (D. Mass. 2001).

But in this case, there is a written policy. Although the officers did not testify consistently about the purpose of that policy, they did have a common understanding of its application: a tow was mandated when the driver of the vehicle had a suspended license. Not towing such a vehicle was commonly understood as a violation of the policy, for which the officer would be subject to

5

discipline. Boxx introduces no evidence contradicting the officers' testimony about facing discipline for failing to follow Directive 406.3/2.3.4,[3] nor any evidence that sergeants exercise discretion in whether to write up officers after learning of a violation. Therefore, I cannot conclude this otherwise-standardized procedure somehow authorized officer discretion. Though the officers here could have risked discipline by violating Directive 406.3/2.3.4 and releasing the vehicle to Stovall – who lived close to the scene – the officers did not act unreasonably by strictly enforcing Directive 406.3/2.3.4.

In his final argument, Boxx asserts Directive 406.3/2.3.4 as it is written and applied is unreasonable because it does not serve the caretaking function of a tow policy when the lawful owner is present. The government counters that whether the policy is reasonable under the particularized circumstances is not the relevant inquiry. Instead, it is whether the policy is standardized so as to limit officer discretion and prevent attendant pretextual searches.

In support of his position, Boxx relies on *Goodrich* and *Duguay*. But in both of those cases, the court found a standardized procedure governing when a tow was warranted did not exist. *Duguay*, 93 F.3d at 351-52; *Goodrich*, 183 F. Supp. 2d at 141-42. After finding no standardized policy existed, both courts analyzed whether the officers' decision to impound the vehicle served the purpose of impoundment. *Duguay*, 93 F.3d at 352-54; *Goodrich*, 183 F. Supp. 2d at 143-44. Ultimately, these cases hold that "a reasonable standard procedure for towing and impoundment may insulate an individual decision to seize a vehicle from successful constitutional challenge." *Goodrich*, 183 F. Supp. 2d at 141.

---

[3] Officer Kral reported that he had not been written up for violating Directive 406.3/2.3.4 in the past. (Doc. No. 27 at 65). More generally, Officer Kral testified officers are not formally reprimanded every time they "violate [policies in] the manual[;]" he agreed with the government's suggestion that "[s]ometimes is it just a teachable moment where they might direct you in the right direction." (*Id.* at 66-67). Officer Cairl was not asked whether he had been disciplined for violating Directive 406.3/2.3.4.

I do not agree with the government's argument that the existence of standardized criteria alone prevents any inquiry as to the reasonableness of that procedure. But I agree that its existence prohibits inquiry into whether the policy is reasonable under the particularized circumstances. That is, review of a standardized procedure is limited to whether it is "*a* reasonable standard procedure." The standardized impoundment procedure will not be deemed unreasonable merely because an alternative standard procedure would have been better. *See Hockenberry*, 730 F.3d at 658-59 (as applied to impoundment *decisions*) (citing cases).

"Impoundments by the police may be in furtherance of 'public safety' or 'community caretaking functions,' such as removing 'disabled or damaged vehicles,' and 'automobiles which violate parking ordinances, and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic.'" *Duguay*, 93 F.3d at 352 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976)). In this case, the "public safety" and "community caretaking functions" are served by preventing a driver with a suspended license from driving and removing the car they were driving from the public road.[4] Although the policy could have been more narrowly-tailored to cover situations where another person could take possession of the vehicle, this general standardized procedure is not constitutionally unreasonable.

I conclude Directive 406.3/2.3.4 was a reasonable standardized procedure. The officers' decision to enforce Directive 406.2/2.3.4 and impound the vehicle, even though the lawful owner was present, did not violate the Fourth Amendment. Because the officers legally impounded the

---

[4] Boxx makes much of the officers' inconsistent understanding of the purpose of the policy. But the officers' were charged with enforcing the policy as it was written and taught to them. They were not charged with understanding the policy-drafter's motive. Further, while Boxx cites Sergeant Murphy when claiming the "stated purpose" of the mandatory-tow policy is to "safeguard property in the vehicle," (Doc. No. 52 at 4), it appears that Sergeant Murphy was referring to the purpose of the inventory search policy within Directive 406.3, not the tow policy itself. (Doc. No. 27 at 11-12). When asked later at the suppression hearing about his understanding of the purpose of the exceptionless mandatory-tow policy, Sergeant Murphy stated, "Honestly, I don't think I can speak to that because I didn't write the policy." (*Id.* at 26).

vehicle, the search incident to the impoundment did not violate the Fourth Amendment for the reasons stated in my previous opinion.[5]

### V. CONCLUSION

For the foregoing reasons, suppression is denied.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge

---

[5] Because Stovall's presence at the scene does not relate to those arguments regarding the officers' search of closed containers during the inventory search, I do not find it necessary to review those arguments *de novo*.