UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,　　　　　　　　　　　　　　Case No. 3:19-cr-210

        Plaintiff,

  v.　　　　　　　　　　　　　　　　　　　　　　MEMORANDUM OPINION
　　　　　　　　　　　　　　　　　　　　　　　　　　AND ORDER

Robert Boxx,

        Defendant.

## I.　Introduction

Defendant Robert Boxx has filed a motion seeking a pretrial determination of the applicability of the mandatory minimum sentence provision found in 18 U.S.C. § 924(e), arguing it does not apply in this case. (Doc. No. 84). The government filed a brief in opposition to the motion. (Doc. No. 85). I subsequently ordered the parties to submit supplemental briefing regarding a recent decision from the Sixth Circuit Court of Appeals, (Doc. No. 86), and the parties did so. (Doc. Nos. 89 and 90). Boxx also has requested an evidentiary hearing. (Doc. No. 90 at 4). For the reasons stated below, I deny Boxx's request for a hearing and his motion.

## II.　Discussion

Boxx has been charged with one count of knowingly possessing a firearm despite previously having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Doc. No. 81). Boxx faces a 15-year mandatory minimum sentence if the government is able to establish he has at least 3 prior convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1).

Pursuant to my order, (Doc. No. 11), the United States Pretrial Services & Probation Office completed a criminal history category report, which indicates Boxx has four predicate convictions – a 1992 conviction for aggravated trafficking in drugs, in violation of Ohio Revised Code § 2925.03(A)(2); convictions in 1997 and 2009 for delivery/manufacture of less than 50 grams of cocaine, in violation of § 333.7401(2)(a)(iv) of the Michigan Complied Laws; and a 2009 conviction for criminal sexual conduct, in violation of § 750.520(D) of the Michigan Complied Laws. (Doc. No. 20 at 6-7 and 11-13). Boxx does not dispute that his 1992 trafficking conviction and his 2009 criminal sexual conduct conviction qualify as predicate convictions, and I conclude that both of those convictions meet the requirements of § 924(e)(1). But Boxx contends neither of his Michigan drug convictions qualify as predicate offenses under § 924(e).[1]

A defendant's conviction under state law qualifies under the Armed Career Criminal Act ("ACCA") as a "serious drug offense" if it "involv[es] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in . . . 21 U.S.C. § 802 . . .) for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). When considering whether a prior state conviction qualifies as a predicate offense, it is the court's task to "determine whether the offense, as described either by the entirety of an indivisible statute or by the relevant alternative of a divisible statute," matches the federally defined offense. *United States v. Pittman*, 736 F. App'x 551, 554 (6th Cir. 2018). Section 333.7401 is a divisible statute, *United States v. House*, 872 F.3d 748, 753 (6th Cir. 2017), and "the specific substance

---

[1] Boxx initially argued "[i]t cannot be determined that [his 1997 conviction] involves a controlled substance prohibited by federal law." (Doc. No. 84 at 5). But he later acknowledged both of his § 333.7401(2)(a)(iv) convictions involved the "delivery of less than 50 grams of cocaine," (Doc. No. 90 at 2), and the state court proceedings confirm Boxx's 1997 conviction involved possession with intent to deliver less than 50 grams of cocaine. *People v. Boxx*, No. 204710, 1998 WL 1989557 (Mich. Ct. App. 1998).

2

a defendant is charged with possessing or delivering is one of the elements of a § 333.7401 violation." *Pittman*, 736 F. App'x at 555.

Boxx maintains neither of his Michigan drug convictions qualify as predicate offenses for purposes of § 924(e) because "the federal definition of cocaine is narrower than the Michigan definition of cocaine, and it is possible that his offenses involved the type of cocaine that is not prohibited under federal law." (Doc. No. 84 at 3-4). He also contends the question of "[w]hether the Michigan definition of cocaine is broader than the federal definition is a question of fact requiring a hearing." (Doc. No. 90 at 4). But Boxx has not met his burden to offer creditable evidence that the applicable federal and Michigan definitions of cocaine actually differ and, therefore, I conclude a hearing is not necessary.

Boxx represents, without objection from the government, that the following definitions are the appropriate definitions to be drawn from § 333.7214(a)(iv) of the Michigan Complied Laws (the first definition) and 21 U.S.C. § 812(c), Schedule II(a)(4) (the second definition):

> Coca leaves and any salt, compound, derivative, or preparation thereof which is chemically equivalent to or identical with any of these substances, except that the substances do not include decocainized coca leaves or extraction of coca leaves which extractions do not contain cocaine or ecgonine. The substances include cocaine, its salts, stereoisomers, and salts of stereoisomers when the existence of the salts, stereoisomers, and salts of stereoisomers is possible within the specific chemical designation.
>
> Coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph.

(Doc. No. 90 at 4).

Boxx submitted an affidavit from Gregory B. Dudley, Ph.D., a professor in, and Department Chair of, the C. Eugene Bennett Department of Chemistry at West Virginia University. (Doc. No. 84-1). Dudley reviewed the Michigan and federal definitions of cocaine and concluded:

3

> The MI definition and coverage of cocaine is broader than the US definition and coverage of cocaine. MI lacks the exclusion for [123I]Ioflupane and broadly covers cocaine stereoisomers, whereas the US covers optical and geometric isomers of cocaine. As discussed herein, there are 6 [diastereomers] of cocaine that are unambiguously covered in MI but not at the US level.

(*Id.* at 1).[2]

In support of his arguments here, Boxx relies primarily on *United States v. Lofton*, No. 20-20221, 2021 WL 5494782 (E.D. Mich. Nov. 23, 2021). (*See* Doc. No. 84 at 4; Doc. No. 90 at 3). In that case, the court accepted the written opinion of Dudley, who was the defendant's expert, that "the federal definition of cocaine is narrower than the Michigan definition of cocaine . . . because federal law excludes certain stereoisomers and derivatives of cocaine that are criminalized in Michigan." *Lofton*, 2021 WL 5494782, at *2. The *Lofton* court accepted Dudley's conclusion that Michigan's definition is broader because Michigan law criminalizes "all stereoisomers," while federal law criminalizes "only optical and geometric isomers." *Id.*

But other courts have rejected this conclusion, both before and after the *Lofton* court issued its decision, and I conclude the reasoning supporting these contrary decisions is more persuasive. *See, e.g., United States v. Taylor*, No. 20-CR-20449, 2022 WL 3447596, *7-9 (E.D. Mich. Aug. 17, 2022) (disagreeing with *Lofton* and concluding the Michigan and federal definitions are the same); *Brazil v. Kallis*, No. 17-CV-1420, 2019 WL 1292681, at *6 (C.D. Ill. Mar. 20, 2019); *United States v. Phifer*, 909 F.3d 372, 377 (11th Cir. 2018).

---

[2] In its opposition brief, the government interpreted Boxx's motion as including an argument that the federal and Michigan definitions of cocaine are different because "federal law [currently] exempts a cocaine derivative known as [123I]ioflupane, and Michigan does not." (Doc. No. 85 at 3). This exemption took effect in 2015, (*see id.* at 4), after Boxx's two Michigan drug trafficking convictions, and I ordered supplemental briefing on the question of whether a recent Sixth Circuit decision, *United States v. Clark*, 46 F.4th 404 (6th Cir. 2022), impacted Boxx's motion. The parties' positions remained unchanged, (*see* Doc. Nos. 89 and 90), though Boxx clarified that his motion rests on the different isomer terminology, and not on the [123I]ioflupane exemption. (*See* Doc. No. 90 at 2-4).

4

The difference in terminology used in the two statutes traces to different periods of time in which the terminology was commonly used and in which the statutes were enacted. While stereoisomers previously were defined as being made up of optical and geometric isomers, that terminology now is considered "archaic and [is] discouraged." *Taylor*, 2022 WL 3447596, at *8. The contemporary generally accepted terminology is that stereoisomers are composed of enantiomers and diastereomers. *Id.* (*See also* Doc. No. 84-1 at 2).

In Dudley's view, optical isomers should be described as diastereomers or enantiomers, while the term "geometric isomers" refers only to a subcategory of diastereomers known as *cis-trans* isomers.[3] (Doc. No. 84-1 at 2). But Dudley also asserted that *cis-trans* isomers of cocaine do not exist. *Taylor*, 2022 WL 3447596, at *9. (*See also United States v. Taylor*, No. 2:20-cr-20449 (E.D. Mich.) (ECF No. 81, PageID. 502) ("It is not possible to designate *cis-* or *trans-* isomers of . . . cocaine.")). As the *Taylor* court noted, accepting Dudley's interpretation of "geometric isomers" would read that term out of the statute and "violate[] the canon of statutory construction that discourages courts from adopting a reading of a statute that renders any part of the statute mere surplusage." *Taylor*, 2022 WL 3447596, at *9 ("[E]ach word in a statute is intended to have 'particular, nonsuperfluous meaning.'" (quoting *Bailey v. United States*, 516 U.S. 137, 146 (1995), *superseded by statute on other grounds*)). While "[t]he canon against surplusage is not an absolute rule," it "assists [specifically] where a competing interpretation gives effect to every clause and word of a statute." *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 385 (2013) (citations and internal quotation marks omitted).

As I noted above, Boxx requested an evidentiary hearing to resolve what he characterizes as a factual dispute regarding "[w]hether the Michigan definition of cocaine is broader than the federal definition." (Doc. No. 90 at 4). But, having abandoned his argument that there was insufficient

---

[3] There are six subcategories of diastereomers, including *cis-trans* stereoisomers. *See, e.g., Taylor*, 2022 WL 3447596, at *8.

5

evidence to show his 1997 conviction involved a controlled substance, (Doc. No. 90 at 2), Boxx identifies only a dispute over statutory interpretation – a matter reserved exclusively to the courts. Moreover, I see no basis to hold a hearing to determine whether I should adopt an interpretation that gives meaning to every word in a statute or one that renders part of that statute superfluous.

I conclude the Michigan and federal definitions of cocaine include the same stereoisomers of cocaine and reject Boxx's argument that the Michigan definition of cocaine is broader than the federal definition. *See Taylor*, 2022 WL 3447596, at *8-10. *See also Brazil*, 2019 WL 1292681, at *6 ("'[G]eometric' and 'optical' isomers are the two sub-types of 'stereoisomers.'"), and *Phifer*, 909 F.3d at 377 (same). Thus, Boxx's § 333.7401(2)(a)(iv) convictions qualify as predicate convictions under § 924(e) and Boxx has at least three prior qualifying convictions.

### III.     CONCLUSION

I conclude the Michigan and federal definitions of cocaine are the same and that the mandatory minimum sentence provision found in 18 U.S.C. § 924(e) applies in this case. Therefore, and for the reasons set forth above, I deny Boxx's request for a hearing and his motion. (Doc. No. 84).

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge